FILED
2017 Apr-07  PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **AMANDA McCARNEY, and** § | | |
| **JEFFREY BAILEY,** § | | |
| § | **CIVIL ACTION NO.:** | |
| **Plaintiffs,** § | | |
| § | _____ | |
| **v.** § | | |
| § | **JURY DEMAND** | |
| **AT&T MOBILITY SERVICES, LLC,** § | | |
| § | | |
| **Defendant.** § | | |

**COMPLAINT**

## I.  INTRODUCTION

1.      This is an action for declaratory judgment, equitable relief, and money damages,

instituted to secure the protection of and to redress the deprivation of rights and violations of the

Americans with Disabilities Act, Title 42 U.S.C. § 12101 *et seq.*, (hereinafter "ADA"); and 42

U.S.C. § 12112(b)(4) (the association provision of the ADA); and of the Family Medical Leave Act

of 1993 ("FMLA"), 29 U.S.C. §2601, et seq.  The plaintiffs seek compensatory and punitive

damages, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

## II.  JURISDICTION AND VENUE

2.      Plaintiffs believe that this Court has jurisdiction in accordance with 28 U.S.C. §

1331, 29 U.S.C. §2617, 28 U.S.C. § 2201 and 2202, 29 U.S.C. § 794a, and 42 U.S.C. § 12133.

3.      The unlawful employment practices alleged hereinbelow were committed by the

defendant within Madison County, Alabama.  Venue is proper pursuant to 28 U.S.C. § 1391and 42

U.S.C. § 2000e-5(g).

4.     Plaintiffs have fulfilled all conditions precedent to the institution of this action including those statutory requirements under the ADA.  Plaintiffs timely filed their respective Charges of Discrimination with the Equal Employment Opportunity Commission within 180 days of occurrence of each last discriminatory act.  Plaintiffs also have timely filed this Complaint within ninety (90) days of their respective  receipts of a Notice of Right To Sue issued to each by the Equal Employment Opportunity Commission.

**III.     PARTIES**

5.     Plaintiff, Amanda McCarney (hereinafter "Plaintiff" or "McCarney"), is a female citizen of the United States and a resident of the State of Alabama.

6.     Plaintiff, Jeffrey "Jeff" Bailey (hereinafter "Plaintiff" or "Bailey"), is a male citizen of the United States and a resident of the State of Alabama.

7.     Plaintiffs were eligible employees under the FMLA in that each had worked for the Defendant for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed within the applicable area.

8.     Plaintiff McCarney is a qualified individual under the Americans with Disabilities Act in that she has physical/mental impairments which substantially limit one or more of her major life activities; and/or she was perceived as having a disability which substantially limits her major life activities; and/or she had a history of having such disabilities. 42 U.S.C. § 12102, 42 U.S.C. § 12131, 29 U.S.C. § 706.

9.     Plaintiff  McCarney is also a qualified individual under 42 U.S.C. § 12112(b)(4) as she is the mother and primary care taker of her son, a minor child, who suffers from

2

mental/emotional medical disabilities. Her son's medical conditions require ongoing medical attention for which she is a responsible care giver.

10.     Plaintiff McCarney's son is a person with a disability in that he has physical and/or mental impairments which substantially limit one or more of his major life activities.  Plaintiff McCarney's son  is also perceived as having a disability which substantially limits his major life activities and has a history of having such disabilities.  42 U.S.C. § 12102, 42 U.S.C. § 12131, 29 U.S.C. § 706.

11.     Plaintiff Bailey is a qualified individual under 42 U.S.C. § 12112(b)(4) as he is the father and a primary care taker of his son, a minor child, who suffers from medical disabilities including chronic respiratory/breathing conditions.  His son's medical conditions require ongoing medical attention for which he is a responsible care giver.

12.     Plaintiff Bailey's son is a person with a disability in that he has physical impairments which substantially limit one or more of his major life activities.  Plaintiff Bailey's son  is also perceived as having a disability which substantially limits his major life activities and has a history of having such disabilities.  42 U.S.C. § 12102, 42 U.S.C. § 12131, 29 U.S.C. § 706.

13.     Defendant, AT &T Mobility Services, LLC (hereinafter "AT&T" or "Defendant"), is a corporation doing business in Madison County, Alabama.

14.     The defendant is an employer pursuant to 42 U.S.C. § 12111(5); an employer within the meaning of 42 U.S.C. § 2000e(a) and (b); and is a covered employer pursuant to 29 U.S.C. §2611(4).  At all times relevant to this action the defendant has employed at least fifteen (15) or more employees and employed 50 or more employees for each working day during each of the 20 or more calendar work weeks in the applicable calendar year.

**IV.**    **FACTUAL ALLEGATIONS**

**INTRODUCTION**

15.    McCarney began working full-time for AT&T Mobility in October 2013 as a Retail Sales Consultant ("RSC") in their Anniston store location. She remained employed as a RSC up and until her unlawful termination on January 27, 2016.

16.    Bailey began working part-time for AT&T Mobility in April 2008. By 2010/2011 he had become a full-time Retail Sales Consultant ("RSC") in their Anniston store location. He remained employed as a RSC up and until his unlawful termination on January 27, 2016.

17.    During the relevant time period the supervisory chain of command for each Plaintiff was: Tim  Hawkins (Assistant Store Manager); Ashley Kendrick (General Store Manager); Robert "RJ" Affie (Area Retail Sales Manager); and Kristi Behr (Director of Sales).

18.    In January 2016 Plaintiffs were two (2) of seven (7) RSCs working in the Anniston store location.

19.    At that time six (6) of the seven (7) Anniston store RSCs had applied for or used FMLA in the past.

20.    During Plaintiffs' employment each suffered interference with their FMLA protected rights and each was discriminated against because of their respective attempts to assert their rights under the FMLA.

21.    During Plaintiff McCarney's employment she was  discriminated against because of her disability/perceived disability/history of a disability and because of her association with her disabled son, a minor child.

22.     During Plaintiff Bailey's employment he was  discriminated against because of his association with his disabled son, a minor child.

### AMANDA McCARNEY

23.     During her employment McCarney applied for and used FMLA leave and/or sought disability accommodations due to various medical conditions of herself and/or of her minor son, for whom she is the primary caretaker.

24.     In January/February 2015 McCarney took FMLA leave and short term disability leave due to medical issues with her appendix. While she was out on FMLA leave General Store Manager Kendrick complained to her co-workers about McCarney's medical leave time—complaining that they were short-handed because of McCarney and asking why she had to be out on leave for as long as she was.

25.     When McCarney returned from FMLA leave Kendrick retaliated against her for having used FMLA leave. Kendrick accused McCarney of fraudulently taking FMLA leave, questioned why she took the time she did, and focused McCarney's yearly evaluation on attendance in relation to her approved medical leave time.

26.     Kendrick told McCarney that her medical leave had been a hardship on her [Kendrick] and asked McCarney how dare she not have tried to come back earlier, whether McCarney's doctor had released her or not. Kendrick also changed McCarney's work schedule at this time to make it more difficult on her.

27.     In July/August 2015 McCarney had to undergo physical therapy treatments for a medical condition with her elbow. She was in a brace from July until December 2015. The scheduled time of McCarney's physical therapy treatments would result in her arrival to work about thirty

minutes late on various days when her treatment was scheduled.

28.     McCarney inquired about taking FMLA for these 30 minute time periods and was told that she could not take intermittent FMLA leave for this. McCarney was not allowed to seek FMLA leave and received attendance points for this time off.

29.     The same day McCarney's physical therapy FMLA request was denied by the defendant she also inquired through a third party vendor Disability Service Center about the reasonable accommodation of having a modified start-time two days per week to allow for her physical therapy appointments.  She also requested the reasonable accommodation of resting and/or being allowed to take a break to ice her elbow.

30.     These accommodations were approved by the third party vendor Disability Service Center, however General Store Manager Kendrick made it clear that she would not allow McCarney to actually have the accommodations.  Kendrick told McCarney to go to change her physical therapy schedule to be on her off day so that she would not disrupt Kendrick's schedule any more. She also refused to waive McCarney's prior attendance occurrences related to her therapy and they remained on McCarney's record.

31.     Kendrick also made a big deal out of McCarney trying to ice or rest her elbow–and Kendrick's negative behavior was such that McCarney rarely was able to take advantage of the approved accommodations.

32.     In September 2015 McCarney sought and was granted FMLA leave on two occasions. One of these was in relation to her minor child's disability.

33.     McCarney is a primary care giver for her son, a minor child, who suffers from mental/emotional medical disabilities. Her son's medical conditions require ongoing medical

6

attention for which she is a responsible care giver.

34.     During McCarney's employment her employer--specifically Ashley Kendrick--was aware of her son's disability/perceived disability/history of a disability and of his need for ongoing medical attention and care giving.

35.     With regard to the second occasion McCarney sought FMLA leave in September 2015 she was scheduled to have surgery on her elbow in late September 2015/early October 2015.

36.     The day she found out her surgery was scheduled she informed Ashley Kendrick that she would need FMLA leave for this procedure and after surgery care.

37.     Kendrick told McCarney to wait, cancel the surgery and push it off for later. McCarney explained this would cause her prolonged pain. Kendrick then asked McCarney to wait until after the holiday season. McCarney told her that it was already scheduled and that her physical health was her priority.

38.     McCarney began short term disability absence on September 28, 2015, and returned to work on October 13, 2015.

39.     Upon her return to work, in October/November 2015 McCarney also sought accommodations and/or use of future intermittent FMLA leave again in relation to her scheduled physical therapy treatment following the elbow surgery.

**JEFFREY BAILEY**

40.     In June 2015 Bailey's son, a minor child, nearly drowned. Since that time his child has suffered from chronic respiratory/breathing medical conditions. Bailey is a primary care giver for his son who suffers from the medical disability and serious health conditions of chronic respiratory/breathing issues.

7

41.     His son's medical conditions require medical attention for which he is a responsible care giver–when the child suffers an attack he must have medical care and Bailey takes him to the doctor. The child also requires continual medical treatment of his chronic conditions for which Bailey is responsible.

42.     During Bailey's employment the defendant--specifically Tim Hawkins, Ashley Kendrick and RJ Affie--were aware of his son's disability/perceived disability/history of a disability and of his need for medical attention and care giving.

43.     Bailey initially sought FMLA leave in association with his son's medical disability in the Fall of 2015.  He inquired about FMLA paperwork from his General Store Manager, Ashley Kendrick, but was told that it was too late for him to seek FMLA leave. No paperwork was ever provided to Bailey and he was denied the ability to seek FMLA accommodation or retroactively applied FMLA.

44.     Absences Bailey had incurred in relation to his role as primary care giver for his son and the treatment of his son's medical condition/disability were counted against him under the company's attendance policy.

45.     On December 8, 2015, Bailey again sought FMLA leave in relation to his son's chronic health condition as the child had suffered another respiratory attack which required Bailey to take him to the doctor and receive medical care. The child's physician supported the need for Bailey to obtain recurring FMLA leave.

## INTENTIONAL VIOLATIONS OF THE FMLA AND THE ADA

46.     During the Fall/Winter 2015-2016, Ashley Kendrick (GM) and RJ Affie (Area Manager) exchanged text messages[1] in which they made very clear their dislike of the store employees, including Plaintiffs, who had medical conditions and applied for and took FMLA. They also mocked the health conditions of their employees and discussed their doubt over the need for FMLA leave by the employees.

47.     Within the texts Kendrick complains to Affie about her employees taking time off for FMLA and states that she, "seriously need[s] something done about this attendance situation." Affie replies that he, "[c]ouldn't agree more," and then suggests to Kendrick that, "you may have to gut your store and start from scratch."

48.     Kendrick and Affie text with each other that they should talk to Kristi in HR about the matter since they are "fed up" with employees being out of work due to medical issues/conditions and stating,  "it is out of control," because per Affie, "there is no way that many employee need to use that much FMLA from one location."

49.     Kendrick and Affie text each other about initiating discipline against Mandy McCarney and Jeff Bailey while also discussing initiating a QIR investigation of falsification of

---

[1] In March/April 2016, Kristina Cothran, a RSC in the Anniston store, was given a cellular phone that had previously been used by Kendrick. Apparently Kendrick did not wipe out the phone's memory before giving it to Cothran and Cothran discovered text messages on the phone between Kendrick and RJ Affie, Area Manager, where the two made derogatory statements about employees with medical conditions or who were trying to take medical leave. They also texted each other about how out of control it was that employees were taking FMLA, how impossible it was for them to run the store with people on FMLA, about launching investigations against those taking FMLA, about creating grounds for discipline of those taking FMLA, and about how they needed to "gut [the] store" to get rid of all the employees in the store on FMLA and start over from scratch with a new group of employees.

company records against Mandy McCarney and another co-worker, Nate McWhorter, for their use of FMLA leave in relation to their medical conditions.

50.     These requests for FMLA fraud investigations of McCarney and McWhorter were denied.

51.     The texts following the denial of their requested fraud investigations make Kendrick and Affie's motives for initiating discipline against Plaintiffs quite clear–when Kendrick learns that HR denied her QIR request to investigate McCarney for FMLA fraud she and Affie vent their frustrations over having to continue to accommodate the medical needs/absences of their employees with comments like, "Grrr."; and "I'm more pissed about this premenstrual than the other because more and more of my staff keep filing FMLA. Jeff [Bailey] left early Tuesday, he said his kid was sick and he's now filed FMLA too."

52.     Affie replies about Bailey's December 2015 FMLA request with; "Serious? That is BS.," to which Kendrick states, "Yea and he'll probably get approved because [sic] they taught him how to do it!!" They continue to complain to each other and Affie responds that continued requests for medical leave by employees are "BS," and "Garbage."

53.     Thereafter they text each other about actually taking action to fire employees on FMLA and made reference to looking for "reasons" to fire McCarney and Bailey and for creating documentation to support same.

54.     They text each other about requesting investigations be launched against McCarney and another employee, Kristina Cothran, for alleged FMLA fraud and about "building a case" against Cothran.  Kendrick also texted Affie that she had been writing up McCarney and Cothran up "for everything" in an effort to build a case against them.

10

55.     Kendrick texted Affie about creating a reason to get rid of McCarney and Bailey. Kendrick texted Affie about "looking back a couple of months" to try and find grounds for termination: "I have documentation on Mandy not providing her customer undivided attention...you may have to look back a couple months to find it. Today apparently there was a situation with a customer where they had to ask her to leave. Tim has a video where as soon as Jeff is telling the customer to leave Mandy leaves her customer to run over and tell the customer to leave just leaving her customer at the phone wall. Could we use that to issue discipline?"  Affie replied, "yes."

56.     Pursuant to their text conversations, in December 2015 Kendrick and Affie took matters into their own hands and made McCarney and Bailey targets of an unfounded, pretextual disciplinary investigation.

57.     On December 11, 2015--only three (3) days after Bailey's second request to receive FMLA leave in relation to his son's disability–he and McCarney became the targets of an unfounded disciplinary investigation of an alleged customer incident which had occurred on December 2, 2015. No action had been taken against Bailey about this alleged incident until after he had sought FMLA.

58.     As a result of the "investigation" both McCarney and Bailey were terminated on January 27, 2016, by Ashley Kendrick, RJ Affie and Christ (Asset Protection).

59.     The alleged reasons for the terminations were pretextual.

60.     Prior to the Plaintiffs' terminations, on or about January 18, 2016, Kristina Cothran, a RSC in the Anniston store, had called the company hotline and made a complaint about Kendrick's discriminatory and retaliatory behavior towards Anniston store employees seeking FMLA or with medical issues. She was contacted by an Investigator, Cheryl, but no action was taken and Kendrick's behavior continued.

61.     In March/April 2016, Cothran, was given a cellular phone that had previously been used by Kendrick and which contained text messages between Kendrick and RJ Affie, Area Manager, where the two made derogatory statements, including those set out above, about employees with medical conditions or who were trying to take medical leave.

62.     After seeing these text messages Cothran immediately contacted Investigator Cheryl and told her about what she had found.  Cothran sent Cheryl screen shots of the messages and then an area manager from Birmingham came to the store and collected the phone.

63.     Cothran repeatedly called the investigator for the next month and was told the investigation was ongoing and that she could not tell her anything else .

64.     Since that time Kendrick resigned and Affie has been promoted.

65.     Neither Bailey nor McCarney have been allowed to return to work.

66.     Plaintiff McCarney was discriminated against on the basis of her disability and/or perceived disability and/or history of a disability by being denied reasonable accommodations and by being subjected to disparate treatment, unwarranted discipline and termination.

67.     Plaintiffs were unlawfully discriminated and retaliated against in relation to their attempts to assert their federally protected rights under the FMLA as the Defendant interfered with their rights under the FMLA and subjected each to disparate treatment, unwarranted discipline and termination.

68.     The defendant intentionally and maliciously discriminated against the Plaintiffs, at least in part, on the basis of each Plaintiff's relationship and association with an individual with a disability by and subjecting each to disparate treatment, unwarranted discipline and termination.

69.     As the result of the defendant's conduct Plaintiffs were deprived of income and other benefits due each.  Each also suffered embarrassment, humiliation, inconvenience, and mental distress.

70.     Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory and punitive damages is their only means of securing adequate relief.

71.     Plaintiffs are suffering and will continue to suffer irreparable injury from the defendant's unlawful conduct as set forth herein unless enjoined by this Court.

**V.     CAUSES OF ACTION**

**COUNT I –PLAINTIFF McCARNEY**
**DISCRIMINATION VIA ASSOCIATION**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,**
**TITLE I AND § 12112(b)(4) AND  § 12203**

72.     Plaintiff realleges and incorporates by reference paragraphs 1 through 71 above with the same force and effect as if fully set out in specific detail hereinbelow.

73.     Plaintiff is a qualified individual under the ADA because of the known disability of her minor son to whom she had a relationship and association as mother and care taker under the meaning of 42 U.S.C. § 12112(b)(4).

74.     The plaintiff's son is a person with a disability, has a history of disability and/or is perceived as disabled pursuant to 42 U.S.C. § 12102, and 29 U.S.C. § 706.

75.     Despite the disability of the plaintiff's son, with or without reasonable accommodation, the Plaintiff was able to perform the essential functions of her job.

13

76.     Plaintiff was subjected to adverse employment actions by the defendant including, but not limited to, disparate treatment, discipline and termination.

77.     At the time of these adverse employment actions, the plaintiff was qualified for the job.

78.     At the time of these adverse employment actions, the defendant had knowledge that the plaintiff had a relative with a disability.

79.     The adverse employment actions occurred under circumstances which raise a reasonable inference that the disability of plaintiff's son was a determining factor in defendant's decisions to take said adverse actions against plaintiff.

80.     The defendant limited and classified the Plaintiff in a manner which adversely affected her employment opportunities and status because of her relationship and association with an individual with a disability.

81.     Defendant, by its discriminatory treatment of the Plaintiff, has intentionally, willfully, with deliberate indifference and without justification deprived plaintiff of her federal statutory and constitutional rights, as described herein.  This deprivation violates plaintiff's rights under the Americans with Disabilities Act.

82.     The plaintiff seeks to redress the wrongs alleged herein in this suit for lost wages, lost benefits, an injunction and a declaratory judgment.  The plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

83.     The defendant acted intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights.

14

84.     As the result of the defendant's conduct the plaintiff was deprived of income and other employment benefits due her.  She also suffered embarrassment, humiliation, inconvenience, and mental distress.

85.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory and punitive damages is her only means of securing adequate relief.

86.     Plaintiff is suffering and will continue to suffer irreparable injury from the defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT II –PLAINTIFF McCARNEY
## DISCRIMINATION IN VIOLATION
## OF THE AMERICANS WITH DISABILITIES ACT

87.     Plaintiff realleges and incorporates by reference paragraphs 1 through 86 above with the same force and effect as if fully set out in specific detail hereinbelow.

88.     Plaintiff is a qualified individual under the ADA because of her known disability and/or perceived disability and/or history of a being a person with a disability.

89.     The Plaintiff is a person with a disability, has a history of disability and/or is perceived as disabled pursuant to 42 U.S.C. § 12102, and 29 U.S.C. § 706.

90.     Despite the Plaintiff's disability, with or without reasonable accommodations, the Plaintiff was able to perform the essential functions of her job.

91.     Plaintiff was subjected to unlawful discrimination by the defendant based on her disability and/or perceived disability and/or history of a disability including, but not limited to, being denied reasonable accommodations and by being subjected to disparate treatment, unwarranted discipline and termination.

15

92.     At the time of this unlawful activity the defendant had knowledge that the Plaintiff suffered from an actual or perceived disability and/or had a history of a disability.

93.     Defendant, by its discriminatory treatment of the Plaintiff, has intentionally, willfully, with deliberate indifference and without justification deprived plaintiff of her federally protected rights, as described herein.  This deprivation violates plaintiff's rights under the Americans with Disabilities Act.

94.     The defendant intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights discriminated against the plaintiff based upon her disability and/or perceived disability in the terms, conditions, benefits of her employment including, but not limited to, denying her reasonable accommodation and by subjecting her to disparate treatment, unwarranted discipline and termination.

95.     The plaintiff seeks to redress the wrongs alleged herein in this suit for lost wages, lost benefits, an injunction and a declaratory judgment.  The plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

96.     The defendant acted intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights.

97.     As the result of the defendant's conduct the plaintiff was deprived of income and other employment benefits due her.  She also suffered embarrassment, humiliation, inconvenience, and mental distress.

98.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory

16

and punitive damages is her only means of securing adequate relief.

99.     Plaintiff is suffering and will continue to suffer irreparable injury from the

defendant's unlawful conduct as set forth herein unless enjoined by this Court.

**COUNT III –PLAINTIFF BAILEY
DISCRIMINATION VIA ASSOCIATION IN VIOLATION
OF THE AMERICANS WITH DISABILITIES ACT,
TITLE I AND § 12112(b)(4) AND  § 12203**

100.     Plaintiff realleges and incorporates by reference paragraphs 1 through 99 above with

the same force and effect as if fully set out in specific detail hereinbelow.

101.     Plaintiffs is a qualified individual under the ADA because of the known disability of

his minor son to whom he had a relationship and association as father and care taker under the

meaning of 42 U.S.C. § 12112(b)(4).

102.     The plaintiff's son is a person with a disability, has a history of disability and/or is

perceived as disabled pursuant to 42 U.S.C. § 12102, and 29 U.S.C. § 706.

103.     Despite the disability of the plaintiff's son, with or without reasonable

accommodation, the Plaintiff was able to perform the essential functions of his job as a RSC.

104.     Plaintiff was subjected to adverse employment actions by the defendant including,

but not limited to, disparate treatment, discipline and termination.

105.     At the time of these adverse employment actions, the plaintiff was qualified for the

job.

106.     At the time of these adverse employment actions, the defendant had knowledge that

the plaintiff had a relative with a disability.

107.    The adverse employment actions occurred under circumstances which raise a reasonable inference that the disability of plaintiff's son was a determining factor in defendant's decisions to take said adverse actions against plaintiff.

108.    The defendant limited and classified the Plaintiff in a manner which adversely affected his employment opportunities and status because of his relationship and association with an individual with a disability.

109.    Defendant, by its discriminatory treatment of the Plaintiff, has intentionally, willfully, with deliberate indifference and without justification deprived plaintiff of his federal statutory and constitutional rights, as described herein.  This deprivation violates plaintiff's rights under the Americans with Disabilities Act.

110.    The plaintiff seeks to redress the wrongs alleged herein in this suit for lost wages, lost benefits, an injunction and a declaratory judgment.  The plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

111.    The defendant acted intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights.

112.    As the result of the defendant's conduct the plaintiff was deprived of income and other employment benefits due him.  He also suffered embarrassment, humiliation, inconvenience, and mental distress.

113.    Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory and punitive damages is his only means of securing adequate relief.

114.     Plaintiff is suffering and will continue to suffer irreparable injury from the defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT IV –PLAINTIFFS McCARNEY AND BAILEY
## INTERFERENCE IN VIOLATION OF
## THE FAMILY MEDICAL LEAVE ACT OF 1993

115.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 114 above with the same force and effect as if fully set out in specific detail herein below.

116.     As set forth herein, plaintiffs were eligible employees under the FMLA in that each worked for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed within the applicable area.

117.     As a result of each plaintiff's serious medical conditions, as set out above, the Plaintiffs made known to the Defendant their needs to take medical leave.

118.     The defendant was placed on notice by each Plaintiff that their respective needs for leave may be for an FMLA-qualifying reason.

119.     The defendant failed to timely notify Plaintiff of their eligibility to take FMLA leave as required under 29 CFR §825.300.

120.     The defendant failed to timely provide Plaintiffs with necessary FMLA paperwork and/or leave forms.

121.     The Defendant terminated the Plaintiffs' employment, thus also denying or otherwise interfering with the Plaintiffs' substantial rights under the FMLA to take FMLA leave to which each was entitled under the Act.

19

122.     The defendant intentionally, maliciously, and/or with reckless indifference interfered with the Plaintiffs' rights under the FMLA.

123.     The plaintiffs are now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

124.     The defendant's unlawful actions against the Plaintiffs, as set out above, were not made in good faith, nor did the defendant have any reasonable grounds for believing that such acts were not a violation of the Plaintiffs' federally protected rights.

125.     The plaintiffs seek to redress the wrongs alleged herein under the FMLA for lost wages (plus interest), lost benefits (plus interest), liquidated damages, an injunction and a declaratory judgment.

<u>**COUNT V – PLAINTIFFS McCARNEY AND BAILEY**</u>
<u>**DISCRIMINATION/ RETALIATION IN VIOLATION OF**</u>
<u>**THE FAMILY MEDICAL LEAVE ACT OF 1993**</u>

126.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 125 above with the same force and effect as if fully set out in specific detail herein below.

127.     As set forth herein, plaintiffs were each eligible employees under the FMLA in that each worked for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed within the applicable area.

128.     As a result of each of the Plaintiff's respective serious medical conditions, as set out above, the Plaintiffs made known to the Defendant each of their needs to take medical leave and also took FMLA medical leave.

129.     As set out in detail above, the Defendant discriminated/retaliated against the Plaintiffs for attempting to assert their federally protected rights under the FMLA by terminating each of their employment.

130.     The defendant intentionally, maliciously, and/or with reckless indifference discriminated/retaliated against each Plaintiff in the terms, conditions, benefits of ther employment because of their attempts to pursue their rights under the FMLA.

131.     The plaintiffs are now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

132.     The defendant's unlawful actions against the Plaintiffs, as set out above, were not made in good faith, nor did the defendant have any reasonable grounds for believing that such acts were not a violation of the Plaintiffs' federally protected rights.

133.     The plaintiffs seek to redress the wrongs alleged herein under the FMLA for lost wages (plus interest), lost benefits (plus interest), liquidated damages, an injunction and a declaratory judgment.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs respectfully pray that this Court assume jurisdiction of this action and after trial:

1.     Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendant are violative of the rights of the plaintiffs, as secured by the Americans with Disabilities Act, and as secured by the Family and Medical Leave Act of 1993;

2.     Grant plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request

from continuing to violate the Americans with Disabilities Act, and the Family and Medical Leave Act of 1993;

3.      Grant the plaintiffs an order requiring the defendant to make each whole by awarding each reinstatement into the position each would have occupied in the absence of the unlawful discrimination by the defendant with the same seniority, leave and other benefits of the position (or front pay), back pay (with interest), and by awarding each compensatory, punitive, liquidated, and/or nominal damages, attorney's fees, costs, and expenses;

4.      Grant plaintiffs reinstatement and a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant, and at the defendant's request, from continuing to violate plaintiff's rights as well as those of others who are similarly-situated pursuant to the Americans with Disabilities Act, and the FMLA.

5.      Grant plaintiffs a preliminary and permanent injunction pursuant to 29 U.S.C. §2617(1)(B) directing the defendant to reinstate all of plaintiffs' employment benefits, including but not limited to health insurance and retirement benefits, retroactive to the date of their cessation;

6.      Grant plaintiffs a declaratory judgment against the defendant that their terminations violated the FMLA and ADA;

7.      Enter a judgment pursuant to 29 U.S.C. §2617(a)(1)(A)(i)(II) against the defendant and in favor of the plaintiffs for the monetary losses plaintiffs sustained as a direct result of the defendant's termination of plaintiffs in violation of the FMLA;

8.      Grant plaintiffs compensatory, punitive and/or nominal damages, liquidated damages and interest;

22

9.      Grant plaintiffs their attorney's fees and costs; and

10.     Grant plaintiffs such other relief as justice requires.


                                        Respectfully submitted,


                                        s/ Temple D. Trueblood
                                        Temple D. Trueblood (TRUET0355)
                                        Counsel for Plaintiffs

OF COUNSEL:
WIGGINS, CHILDS, PANTAZIS FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama  35203
(205) 314-0500



**THE PLAINTIFFS DEMAND TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**

                                        s/ Temple D. Trueblood
                                        OF COUNSEL



**Plaintiffs requests this Honorable Court to serve via certified mail upon each of the named Defendants the following : Summons, Complaint.**

**Defendant's Address:**
AT&T Mobility Services LLC
c/o Registered Agent
C T Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104

                                        s/ Temple D. Trueblood
                                        OF COUNSEL

23